IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 1, 2006

## JOSEPH JACKSON, Jr., v. STATE OF TENNESSEE

**Appeal as of Right from the Criminal Court for Shelby County
Nos. 00-09313, 00-09314   Arthur T. Bennett, Judge**

---

**No. W2006-00606-CCA-R3-HC  - Filed January 31, 2007**

---

A Shelby County jury convicted the Petitioner, Joseph Jackson, Jr., of two counts of attempted first degree murder, and the trial judge imposed two twenty-year sentences to be served concurrently. The Petitioner filed a pro se petition for habeas corpus relief, which was dismissed by the habeas court without a hearing.  On appeal, the Petitioner contends he could not have been convicted for these two criminal attempts under statutory law and the underlying judgment is therefore illegal and void.  Finding no reversible error exists, we affirm the judgment of the habeas court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and DAVID G. HAYES, J., joined.

Joseph Jackson, Jr., Whiteville, Tennessee, pro se.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; William L. Gibbons, District Attorney General; David N. Pritchard, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I.  Facts

The Petitioner was convicted of two counts of attempted first degree murder that occurred in February of 2000.  The  following facts were described by this Court on the Petitioner's direct appeal:

> On February 3, 2000, there was a large altercation between a number of gang members and other students in the parking lot of the MAPCO Express convenience store (MAPCO) on Raines Road in southeast Memphis.  The altercation took place in the afternoon, about the time nearby schools were dismissing.  The defendant had a "run in" the previous day with some rival gang members and, according to his statements to police, had been threatened by them.  Due to that "run in," it was fairly

common knowledge in the community that there would be a fight at the MAPCO on February 3, thus there was quite a large crowd in the parking lot.

There is evidence that earlier on February 3, the defendant told his friend, Lydell Yarbrough, there would be an altercation later that day. Yarbrough brought a rifle to school and let the defendant know he had it. It is unclear if Yarbrough brought the rifle because of the potential altercation. The defendant then put it into his backpack and carried it throughout the school day. In order for the rifle to be carried in the backpack without detection, it had to be disassembled.

After school, as the crowd started assembling at the MAPCO, a number of fights broke out, including one between the defendant and Johnny Maxwell. According to at least two witnesses, a police officer and Johnny Maxwell, Maxwell "beat up" the defendant in a fight that lasted about a minute. At this time, the defendant was not carrying the rifle. The crowd at the MAPCO had grown quite large by this time.

Immediately after the fight between the defendant and Maxwell, the defendant walked to a nearby truck where two of his friends, including Yarbrough, were sitting. The police officer stated that Maxwell and his friends were taunting the defendant. The crowd had still not diminished. The defendant then grabbed or was handed the rifle, and walked back with the assembled rifle toward Maxwell. There are differing versions as to who assembled the rifle and whether Maxwell and his friends walked towards the defendant as the defendant walked to the truck or were simply still hanging around the MAPCO lot. Calmly, the defendant walked towards Maxwell, lifted the rifle, and fired one shot in an attempt to kill Maxwell. He missed Maxwell, but the bullet struck twelve-year-old Brittney Taylor, who was walking behind the crowd, in the side. She had to be airlifted to the hospital. The defendant then put the gun into the truck and was almost immediately apprehended by the off-duty police officer who had witnessed the scene. The defendant's two friends drove away from the scene in the truck but were pulled over a short distance from the MAPCO.[1]

The defendant was convicted by a jury of attempted first degree murder of both Johnny Maxwell and Brittney Taylor. He was sentenced to twenty years for each conviction, to be served concurrently in the Tennessee Department of Correction, as a Range I standard offender.

State of Tennessee v. Joseph Jackson, Jr., No. W2001-02779-CCA-R3-CD, 2002 WL 31887657, at *1-3 (Tenn. Crim. App., at Jackson, Dec. 17, 2002) (footnote added), *no Tenn. R. App. P. 11*

---

[1]We know from another portion of the Court's description of the facts that Taylor was not killed as a result of the shooting.

*perm. to app. filed*.

The Petitioner filed a petition for post-conviction relief, which was denied after an evidentiary hearing. The Petitioner did not appeal that denial. The Petitioner then filed a habeas corpus petition in January of 2006, and it was dismissed by the trial court without a hearing in February of 2006. It is from that order of dismissal that the Petitioner now appeals.

## II. Analysis

The Petitioner asserts that he is entitled to habeas corpus relief because his convictions directly contravene statutory law and are therefore illegal. The Petitioner explains that he had the requisite intent to sustain only one count of attempted first degree murder: the count involving Maxwell. He contends that, by statute, his intent cannot be transferred to Taylor, who he shot. In support of this contention, the Petitioner cites two statutes, Tennessee Code Annotated section 39-12-106(a), which describes a prohibition on multiple convictions based on the same offense, and Tennessee Code Annotated section 39-12-101, which outlines the crime of "criminal attempt." The Petitioner claims that the trial court was without jurisdiction or authority to sentence him because of these two statutes.

Article I, section 15 of the Tennessee Constitution guarantees the right to seek habeas corpus relief. Although the right is guaranteed in the Tennessee Constitution, the right is governed by statute. Tenn. Code Ann. § 29-21-101 (2003) *et seq*. The determination of whether habeas corpus relief should be granted is a question of law and is accordingly given <u>de novo</u> review. <u>Hart v. State</u>, 21 S.W.3d 901, 903 (Tenn. 2000). Although there is no statutory limit preventing a habeas corpus petition, the grounds upon which relief can be granted are very narrow. <u>Taylor v. State</u>, 995 S.W.2d 78, 83 (Tenn. 1999). It is the burden of the Petitioner to demonstrate by a preponderance of the evidence that "the sentence is void or that the confinement is illegal." <u>Wyatt v. State</u>, 24 S.W.3d 319, 322 (Tenn. 2000). In other words, the very narrow grounds upon which a habeas corpus petition can be based are as follows: (1) a claim there was a void judgment that was facially invalid because the convicting court was without jurisdiction or authority to sentence the defendant; or (2) a claim the defendant's sentence has expired. <u>Archer v. State</u>, 851 S.W.2d 157, 164 (Tenn. 1993). In contrast, a voidable judgment is "one which is facially valid and requires the introduction of proof beyond the face of the record or judgment to establish its invalidity." <u>Taylor</u>, 995 S.W.2d at 83; <u>see</u> <u>State v. Richie</u>, 20 S.W.3d 624, 633 (Tenn. 2000).

In the case under submission, the Petitioner asserts that he is entitled to habeas corpus relief because the trial court was without authority or jurisdiction to sentence him based on two statutes. First, Tennessee Code Annotated section 39-12-106(a) states, "a person may not be convicted of more than one (1) of the offenses of criminal attempt, solicitation or conspiracy for conduct designed to commit or culminate in the commission of the same offense." The Petitioner claims this statute prevents him from being convicted for the attempted murder of both Maxwell and Taylor. We cannot agree with the Petitioner's reading of the statute. In our view, the statute merely establishes that the offenses of attempt, solicitation, and conspiracy are essentially merged together and one

cannot be convicted of more than one of those three offenses for a specific act or course of conduct involving the same victim. Tenn. Code Ann. § 39-12-106(a), Sentencing Comm'n Cmts. Although the Petitioner has alleged his conviction is void, based on its directly contravening the above statute, he is incorrect in his position on the law. As such, the Petitioner is not entitled to relief on this issue. See William Smith v. Virginia Lewis, Warden, — S.W.3d —, 2006 WL 2623211, No. E2004-01800-SC-R11-HC, at *2 (Tenn. Sept. 14, 2006) (stating, "As this Court has stated previously, "[a] void or illegal sentence is one whose imposition directly contravenes a statute." (citations omitted)); McLaney v. Bell, 59 S.W.3d 90, 91 (Tenn. 2001) ("We hold that if the face of the judgment or the record of the underlying proceedings shows that the concurrent sentence is illegal, such sentence creates a void judgment for which habeas corpus relief is available.").

The Petitioner also claims that the criminal attempt statute prohibits two convictions based on the fact that the Petitioner had only the specific intent to kill Maxwell, not Taylor. Tennessee Code Annotated Section 39-12-101(a) states:

> A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step towards the commission of the offense.

Subsection (1) of the criminal attempt statute addresses the classic situation where a pickpocket attempts to steal a wallet. The pickpocket puts his hand in the jacket pocket of a passerby, only to find there is no wallet there. He would still be guilty of criminal attempt. See, e.g., State v. Hughey, No. W2004-01074-CCA-R3-CD, 2006 WL 2000734, at *8-9 (Tenn. Crim. App., at Jackson, July 18, 2006) (in context of attempted robbery). Subsection (2), under which the Petitioner was presumably convicted, addresses the situation where one does some act, with the appropriate intent, that would cause an element of the offense to be satisfied without the person doing anything else (i.e., pulling the trigger on a gun while aiming it at someone). Finally, subsection (3) is the substantial step subsection, whereby one can be convicted of criminal attempt when he makes a substantial step towards the completion of a crime. See State v. Elder, 982 S.W.2d 871, 875 n.2 (Tenn. Crim. App. 1998).

The Petitioner claims this statute outlines precisely why he cannot be convicted of attempted murder of Taylor, because, although he acted, he did not act with the intent to kill Taylor, as required in section (a) and subsection (2).

Per section (a), "the kind of culpability otherwise required for the offense" refers to the intent required to commit first degree murder. According to Tennessee Code Annotate section 39-13-202(a)(1), first degree murder is the "premeditated and intentional killing of another." Thus, if the Petitioner acted with "premeditation" and "intentionally" he would satisfy the mens rea requirement for criminal attempt no matter at whom he shot, in his attempt to kill.

Although the Tennessee Supreme Court has never specifically affirmed this reading of the statute vis-á-vis attempted murder, this was our ruling on the Petitioner's direct appeal. Jackson, 2002 WL 31887657, at *5. In our opinion on direct appeal, we analyzed the Tennessee Supreme Court's decision in Millen v. State, in which the Supreme Court stated

> We conclude that it is unnecessary to resort to the common law doctrine of transferred intent under our first degree murder statutes. The definition of "intentional" in the statute does not require the State to prove that the defendant killed the intended victim. Instead it requires the State to prove that the defendant intended to kill a person, i.e., that the defendant had a "conscious objective or desire to cause the result.["] As in the present case, where a defendant, acting with premeditation and deliberation, kills one person while intending to "engage in the conduct or cause the result," first degree murder is proven. Moreover, where an innocent bystander is killed during a defendant's attempt to perpetrate first degree murder, first degree felony murder is proven.

988 S.W.2d 164, 164 (Tenn. 1999) (footnote omitted). Based on this language from the Tennessee Supreme Court, we determined the same logic applied to attempted murder.

Because it has been specifically determined on direct appeal that the Petitioner could be convicted of two criminal attempts based on the intent to merely kill one, the Petitioner is incorrect in his assertion that his conviction is void. Although he has alleged a void conviction, one which directly contravenes a statute, he is incorrect on the state of the law which would make his conviction void. See Lewis, 2006 WL 2623211, at *2.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE